[Crim. No. 17618. In Bank. July 19, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS BRACAMONTES FLORES, Defendant and Appellant.

## COUNSEL

Harold F. Tyvoll, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, A. Wells Petersen and Harley D. Mayfield, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant appeals from an order granting probation (Pen. Code, § 1237, subd. 1) following conviction of burglary (Pen. Code, § 459)[1] by court trial. He contends (1) that because the only evidence

---

[1]Unless otherwise specified all statutory references are to sections of the Penal Code.

Defendant waived his constitutional rights and stipulated that the court could make necessary findings on a review of the reporter's transcript of, and exhibits received at, the preliminary hearing. Factual matters hereinafter recited are extracted from evidence received at such preliminary hearing.

connecting him with the crime resulted from an unlawful detention and arrest the information should have been set aside on his pretrial motion therefor (§ 995),[2] and (2) that because the court failed to fix the degree of the offense before granting probation the crime must be deemed to be of the second degree. We conclude that defendant was lawfully detained and arrested and therefore properly convicted, but that because of the failure of the trial court to fix the degree of the crime the conviction must be found to be of the second degree.

Louis Quintero and his family were absent from their home from approximately noon of one day to noon of the following day. During the intervening evening at approximately 10:30 p.m. Norma Agundez, a neighbor, saw two men carrying television and stereo equipment from the Quintero home. She testified that each of the men was a Mexican-American and that each was approximately 5 feet 9 inches tall, weighed about 170 pounds and wore dark clothing. They placed the equipment in the trunk of a dark sedan of a vintage about the mid-1940's. Mrs. Agundez called another neighbor, Ronald Gaboury, and reported that she thought a theft was in progress.

Gaboury testified that following a telephone call from Mrs. Agundez he also observed two males in the act of removing stereo equipment from the Quintero home to an automobile. He described the men as Mexican-Americans, wearing dark clothing and wide-brimmed hats, each being 5 feet 8 inches to 5 feet 9 inches in height, and weighing 160 to 165 pounds. The vehicle, which was parked "only about twenty feet" from the window through which Gaboury made his observations, was a dark colored, "fastback" General Motors sedan of a model year somewhere "in the forties." He telephoned the police who arrived about 10 minutes after the suspects had left.

Officer Gary Reichle, on whose beat the Quintero burglary had occurred, monitored a radio report of the burglary and the following day read the official report, noting Gaboury's descriptions of the suspects and of their automobile. He looked for such a vehicle during the remainder of the night that he had heard the radio report and during the next three nights. In that period of time he observed only one automobile which fit the description. On investigation, however, it was determined that the vehicle had not been in an operating condition at the time of the commission

---

[2]Defendant did not seek writ review of the order denying the motion. (§ 999a.) The order is reviewable on this appeal. (*People* v. *Costa* (1956) 141 Cal.App.2d 795, 798 [297 P.2d 667].)

of the crime. Four days after the burglary, during a routine evening patrol about two miles from the Quintero home, the officer saw a 1947 Pontiac which fit the description of the suspect vehicle. He ordered the driver to stop the car and discovered that it was occupied by four males of Mexican descent. The driver, who is the defendant, wore a wide-brimmed hat and fit the general physical description of the suspects. The officer advised defendant why the vehicle had been stopped and stated that defendant was a suspect in the burglary of the Quintero home. He properly advised defendant of his right to remain silent and to representation by counsel. Defendant said that he understood his rights and that he would respond to the officer's questioning.

Defendant stated that he had spent the night of the burglary with Nolberto Vasquez at a bar, had been there at the time the crime was reported to have occurred, and had no knowledge of the offense or of the Quintero residence. Vasquez, who was the registered owner of and a passenger in the vehicle, also waived his rights to remain silent and to be represented by counsel and stated that he could not remember where he had been on the night in question. He also stated that he often wore a wide-brimmed hat similar to that worn by defendant.

Officer Reichle, after conferring on the scene with the officers who had made the burglary investigation and report and had responded to Reichle's call, arrested the suspects. Exemplars of defendant's fingerprints taken at the time of his booking matched latent prints removed from a window through which the burglars had apparently entered the Quintero home.

Defendant argues that the illegality of his detention and arrest led to the discovery that he was the person whose latent fingerprints were removed from the Quintero window; that without such illegally seized evidence there remains insufficient competent evidence to hold him to answer; and that his timely motion to set aside the information should have been granted.

Fingerprint exemplars taken during an unlawful detention have been held to constitute tainted evidence subject to exclusion under Fourth Amendment constraints. (*Davis* v. *Mississippi* (1969) 394 U.S. 721, 726-727 [22 L.Ed.2d 676, 680-681, 89 S.Ct. 1394]; *People* v. *Hernandez* (1970) 11 Cal.App.3d 481, 492 [89 Cal.Rptr. 766].) However, for reasons which follow, we conclude that both the detention and arrest were proper, and that none of the evidence flowing therefrom was subject to exclusion.

Accordingly, we need not reach the question whether the unchallenged evidence is sufficient in and of itself to warrant the denial of the motion.[3]

■ A police officer may stop and question persons on public streets, including those in vehicles, when the circumstances indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of the officer's duties. (*People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Martinez* (1970) 6 Cal.App.3d 373, 376 [86 Cal.Rptr. 49].) ■ The good faith suspicion which warrants an officer's detention of a person for investigative reasons is necessarily of a lesser standard than that required to effect an arrest. (*People* v. *Mosco* (1963) 214 Cal.App.2d 581, 584-585 [29 Cal.Rptr. 644].) ■ Where there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint. (See *People* v. *Henze* (1967) 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)

■ Officer Reichle in the instant case had acquired knowledge through official sources that a recent burglary had taken place on his beat. He knew the general description of the suspects and of the vehicle used by them. For four nights during routine patrol he had searched for such a vehicle and had discovered but one which fit the description, and that one had proved to be a false lead. When he observed a second such vehicle, unique primarily because of its vintage and occupied by persons who fit the general description of the suspects, he could reasonably entertain a sufficient good faith suspicion to warrant a detention of the occupants for investigative purposes.[4] In fact, to have neglected to investigate would

---

[3]We likewise need not consider whether the procedures employed here are sufficiently distinguishable from the " 'dragnet' procedures" employed in *Davis* (*Davis* v. *Mississippi, supra,* 394 U.S. 721, 728 [22 L.Ed.2d 676, 681], Harlan, J., concurring), to warrant the exception to the rule as suggested in that case. The majority in *Davis* notes that "It is arguable . . . that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause . . . . We have no occasion in this case, however, to determine whether the requirements of the Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest. For it is clear that no attempt was made here to employ procedures which might comply with the requirements of the Fourth Amendment . . . ." (*Id.,* at pp. 727-728 [22 L.Ed.2d at p. 681].)

[4]It appears, although not with certainty, that the police report read by Reichle described the vehicle as a 1949 Buick, rather than generally as a 1940-1950 vintage General Motors product as testified to by Gaboury or, as was the fact, a 1947 Pontiac. If so, we deem the variance to be of no moment. The remaining descriptive features, dark color sedan, fastback model of a vintage in the 1940's whether other-

have constituted a failure to properly discharge his duties as an officer of the law. Although Officer Reichle indicated that he would have stopped all vehicles fitting the general description furnished to him, the uniqueness of the described vehicle and the selective investigative procedures employed by him clearly did not constitute a "dragnet approach" as claimed by defendant. (Cf. *People* v. *Hutchinson* (1967) 254 Cal.App.2d 32, 40 [61 Cal.Rptr. 868].)

In view of the foregoing the magistrate properly found present factual matters which warranted the detention of the vehicle, and such determinations will not be reweighed on appeal. (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Vermouth* (1971) 20 Cal.App.3d 746, 756 [98 Cal.Rptr. 65].)

■ The magistrate made no specific finding as to the validity of the arrest but the record clearly establishes probable cause for the arrest. In addition to the evidence relating to the suspected vehicle, defendant and Vasquez both fit the general description of the suspects as to ancestry, height and weight; defendant was wearing the distinctive hat worn by the suspects; defendant stated that on the night of the burglary he was with Vasquez; Vasquez could not confirm defendant's assertion that they had spent the evening in question at a bar, although but four days had elapsed; and Vasquez stated that he, too, often wore the distinctive hat. Officer Reichle carefully verified his recollections of the matters stated in the police report by conferring on the scene with the officers who prepared the report before making arrests. Certainly, a man of ordinary caution and prudence could believe and reasonably entertain an honest and strong suspicion that defendant had participated in perpetration of the burglary of the Quintero's home. (See *People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].) ■ The arrest was thus lawful and the fingerprint exemplars were properly taken and were properly received into evidence at the preliminary hearing.

No claim is made that the evidence connecting defendant with the commission of the crime is insubstantial. ■ In view of the incriminating fingerprints found at the site of the burglary in addition to the evidence constituting probable cause for arrest, such a claim would necessarily be rejected. (See *Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464-465 [93 Cal.Rptr. 587, 482 P.2d 211].)

Following conviction it was stipulated that the degree of the burglary

---

wise described as a Buick or a General Motors product, is sufficiently specific. There was evidence that General Motors vehicles of that vintage are difficult to distinguish in the dark.

be fixed by the trial court at the time of the hearing upon application for probation. At that hearing the court suspended imposition of sentence and, after granting probation, ordered that defendant serve the first year of the three-year period of probation in the custody of the sheriff. The court, however, apparently through inadvertence, neglected to fix the degree of the crime at the time of the probation hearing or at any other time. Defendant contends that as a result of such inaction by the trial court the degree of the crime must now "be deemed to be of the lesser [second] degree" pursuant to the provisions of section 1192. (See also § 1157.)[5] We agree.

The benefits accorded by section 1192 are available only when, pursuant to its express provisions, the court fails to fix the degree of the crime "before passing sentence."[6] In the instant case the court suspended the imposition of sentence and a literal reading of section 1192 would indicate that sentence thus has not been imposed and a judgment has not been rendered. Defendant contends, however, that the making of an order granting probation must be deemed an act "passing sentence," that is, a judgment (fn. 6, *infra*) for purposes of section 1192. Such contention appears, superficially at least, to be in conflict with *People* v. *Superior Court (Giron)*, 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636]. We held in

---

[5]Section 1192 provides: "Upon a plea of guilty, or upon conviction by the court without a jury, of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree. Upon the failure of the court to so determine, the degree of the crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

Section 1157 provides: "Whenever a defendant is convicted of a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime of which the defendant is guilty shall be deemed to be of the lesser degree."

[6]The phrase "passing sentence" is not otherwise defined in the Penal Code. Elsewhere the phrase "pronouncing sentence" is used synonymously with "pronouncing judgment." (§ 1191.) For purposes of our inquiry here we deem there to be no distinction in the meaning of the phrases "passing sentence," "pronouncing sentence" and "pronouncing judgment." All are deemed to occur at such time as the court imposes sentence, which act constitutes the rendition of judgment. (*People* v. *Bauer* (1966) 241 Cal.App.2d 632, 635 [50 Cal.Rptr. 687]; *People* v. *McDonough* (1961) 198 Cal.App.2d 84, 86-87 [17 Cal.Rptr. 643].) Although prior to the time section 1237 was amended to provide for appeal from a "sentence" as well as from a "judgment" we dismissed appeals from "sentences" when an appeal was taken from both the "judgment" and "sentence" (see *People* v. *Gallardo* (1953) 41 Cal.2d 57, 60 [257 P.2d 29]), the basis therefor was not the lack of identity as between the imposition of sentence and the rendition of judgment. "The judgment *is* the sentence and appealing from both is tautological." (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 33, fn. 1 [9 Cal.Rptr. 793, 357 P.2d 1049], italics added; see also Bishop, *A Judgment In A Sentence* (1954) 29 State Bar J. 111.)

that case that an order granting probation is not to be deemed a judgment except for purposes of appeal as provided in section 1237.[7]

Notwithstanding the limited effect of an order granting probation as a "judgment," section 1237 purports to do more than simply provide that a defendant may appeal from an order granting probation. ■ The section provides in addition that an order granting probation is to be *"deemed a final judgment"* for the purposes of appeal. We accord to this language of the statute a legislative intent that a defendant, as in an appeal from a final judgment, may challenge on appeal all matters necessarily adjudicated in the proceedings culminating in the order granting probation as to which he has preserved the right to contest. This includes all factual findings of criminal conduct as well as legal determinations made by the trial court. Section 1157 provides that when a jury trial is waived the trial judge shall "at the conclusion thereof," announce his findings upon the issues of fact.[8] The degree of a crime is such an issue of fact which would thus be reviewable on an appeal from an order granting probation.

■ The general language of section 1167 that the court must make factual findings at the "conclusion" of a nonjury trial has been held to be controlled by the more specific language of section 1192 that the degree be fixed "before passing sentence." (See *People* v. *Davis* (1969) 270 Cal. App.2d 841, 844-845 [76 Cal.Rptr. 242].) We do not take exception to that ruling but conclude, for the reasons which follow, that it is not applicable when, instead of rendering judgment by "passing sentence," the court suspends proceedings and makes an order granting probation.

Section 1192, by its own language, purports to be applicable only when the court has in fact imposed a sentence. It states in effect that the crime will be deemed to be of the lesser degree if the degree has not been determined by the court when sentence is imposed. It is silent as to the determination of the degree when sentence has not or is not to be imposed. ■ It is thus manifest that when the imposition of sentence is not con-

---

[7]The issue in *Giron* (11 Cal.3d at p. 796) is the authority of a trial court to consider a motion to withdraw a plea of guilty after conviction, suspension of the imposition of sentence and an order granting probation. We held that, "Although such an order granting probation is 'deemed to be a final judgment' " for the limited purpose of taking an appeal therefrom "it does not have the effect of a judgment for other purposes."

[8]Section 1167 provides: "When a jury trial is·waived, the judge or justice before whom the trial is had shall, at the conclusion thereof, announce his findings upon the issues of fact, which shall be in substantially the form prescribed for the general verdict of a jury and shall be entered upon the minutes."

templated, as when proceedings are indefinitely suspended and probation is granted, section 1192 is not intended to constitute legislative authorization for a continuing, indefinite delay until the time of sentencing before making a finding as to an important factual element of the charged criminal conduct.[9]

██ In the absence of specific legislative direction applicable when sentencing has not been imposed, the general language of section 1167 controls the timeliness of the determination of the degree of the crime, and the general language of section 1157 controls as to the effect of the failure to act in a timely manner. Although we are not directly aided by the Legislature as to the time limits within which a trial is or must be concluded (§ 1167) we are, however, clearly advised by indirection. ██ When the Legislature has directed that an order granting probation may be deemed a "final judgment" from which an appeal may be taken (§ 1237), it must follow that trial proceedings were to be deemed concluded with the granting of that "final judgment" order.

Where as here the court "failed to find the degree of the crime" prior to the conclusion of the trial, the crime "shall be deemed to be of the lesser degree." (§ 1157.)

The order granting probation is modified by providing that the crime of burglary of which defendant was convicted is of the second degree. As so modified the order is affirmed.

McComb, J., Tobriner, J., Burke, J., and Clark, J., concurred.

---

[9]Sentencing may not actually ever occur in such circumstances as, upon successfully completing his probationary period, a defendant may be discharged (§ 1203.3), his plea of guilty or conviction may be set aside, the charges dismissed (§ 1203.4; see also § 1203.45 in the case of minors), and proceedings terminated.