Filed 12/8/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TRACY CAIN,<br><br>    Defendant and Respondent. | 2d Crim. No. B342911<br>(Super. Ct. No. CR22297)<br>(Ventura County) |

Respondent Tracy Cain was sentenced to death in 1988. The People appeal a trial court order recalling, inter alia, the death penalty sentence pursuant to Penal Code section 1172.75.[1]

We hold that the "full resentencing rule" (allegedly triggered because of a now invalid one-year prior prison term enhancement) does not provide an appropriate vehicle to achieve respondent's stated goal of nullifying the previously imposed sentence of death. He may now seek modification of the determinate portion of the judgment which is insignificant.

---

[1] All statutory references are to the Penal Code.

Respondent also contends that the instant appeal is premature. We reject this contention because the order "affects" the substantial rights of the People. We hold that an order vacating a judgment of death necessarily affects the substantial rights of the People.

As we shall explain, the trial court is without power to enter an order nullifying the death penalty. This death sentence was affirmed by the California Supreme Court. It is final. Recall and resentencing as to the death sentence would violate section 1509, which was enacted by voter initiative. Section 1509 provides, "A writ of habeas corpus pursuant to this section is the exclusive procedure for collateral attack on a judgment of death."[2]

Thus, we reverse the trial court's order recalling the death sentence. We affirm the order recalling the noncapital portions of respondent's sentence. We remand the matter to the trial court for resentencing on the noncapital portions of the judgment.

*Factual and Procedural Background*

The People charged respondent with the "special circumstances" murders of William and Modena Galloway during a 1986 home invasion burglary. A jury found him guilty of two counts of first-degree murder (§§ 187, subd. (a), 189, subd. (a)),

---

[2] Neither the superior court nor the Court of Appeal should "tinker" with a judgment of death affirmed by the California Supreme Court. Whether couched in stare decisis theory, law of the case theory, or the like, we should be loath to interfere with, alter, or amend such a judgment. The Legislature has not expressly said that a section 1172.75 challenge authorizes a superior court to vacate an affirmed death sentence. And, we doubt that the Legislature, by simple statute, can change the constitutional provisions for the implementation of the death penalty.

2

two counts of burglary (§ 459), and one count of robbery (§ 211). It found true several special circumstance allegations.

For each murder, the jury imposed the death penalty. The trial court sentenced respondent to death. It imposed a consecutive determinate term of seven years: the high term of six years for burglary plus a one-year enhancement for a prior prison term under section 667.5, former subdivision (b). In 1995 the Supreme Court affirmed the judgment. (*People v. Cain* (1995) 10 Cal.4th 1, 18, cert. denied, *Cain v. California* (1996) 516 U.S. 1077 [133 L.Ed.2d 734].) Respondent's subsequent petition for writ of habeas corpus was denied. (See *Cain v. Chappell* (9th Cir. 2017) 870 F.3d 1003, cert. denied, *Cain v. Davis* (2018) 586 U.S. 987 [202 L.Ed.2d 348].)

In 2022 the California Department of Corrections and Rehabilitation identified respondent as potentially eligible for resentencing under section 1172.75 because the one-year enhancement for a prior prison term was invalid.[3]

Respondent submitted points and authorities arguing that section 1172.75 requires a full resentencing hearing on all counts. He requested the trial court to exercise its discretion under

---

[3] "Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years. [Citation.] . . . Effective as of January 1, 2020, Senate Bill No. 136 . . . amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)

section 1385 to strike the special circumstance allegations to "allow [the] Court to impose a life-term with the possibility of parole." He claimed the court could do so because his offense was committed before the passage of Proposition 115.[4]

The People objected and argued that section 1172.75 does not apply to respondent because he is currently sentenced to death. They contended respondent's petition was an impermissible collateral attack on that sentence, which can be challenged only by a petition for a writ of habeas corpus under section 1509.

After taking the matter under submission, in October 2024 the trial court determined that respondent is eligible for resentencing. It reasoned: "Jurisdiction was given to courts to recall and resentence under [section] 1172.75. The jurisdiction does not conflict with the limitations imposed by [section] 1509 because this is not a collateral attack or even an attack. This was not a separate action filed by [respondent], and there is no error, illegality, or unauthorized sentence claimed. The Legislature

---

[4] After respondent's conviction, "Proposition 115, the 'Crime Victims Justice Reform Act,' changed criminal law in several respects on June 6, 1990." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 286.) It added section 1385.1 to the Penal Code, which provides: "Notwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss any special circumstance which is admitted by a plea of guilty or nolo contendere or is found by a jury or court as provided in Sections 190.1 to 190.5, inclusive." The Supreme Court stated, "[A]s to most of Proposition 115's provisions we see no reason to depart from the ordinary rule of construction that new statutes are intended to operate prospectively." (*Tapia*, at p. 287.)

4

simply extended jurisdiction to a select group of individuals to require resentencing for an otherwise lawful sentence at the time it was imposed.  There are no cases holding that such recall and resentencing statutes constitute a collateral attack."

At a subsequent hearing, the trial court vacated respondent's entire sentence and said that it would resentence him "at a later time."  The trial court's reasoning exalted form over substance.  Regardless of how the section 1172.75 proceeding was initiated, it was, and is, a collateral attack on the judgment of death.  (See discussion at pp. 14-18, *post*.)

*Section 1172.75*

Section 1172.75 was enacted in 2021 and became effective on January 1, 2022.  (Stats.2021, ch 728, § 3.)  It provides: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."  (§ 1172.75, subd. (a).)

"A defendant serving a term for a judgment that includes a now-invalid enhancement is entitled to resentencing.  (§ 1172.75, subds. (a), (c).)  To facilitate the process, the statute directs California's Department of Corrections and Rehabilitation . . . to 'identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a).'  (*Id.*, subd. (b).)  Upon receiving that information, the sentencing court must 'review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a).'  (*Id.*, subd. (c).)  'If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence

5

and resentence the defendant.' (*Ibid.*)" (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1055 (*Rhodius*).)

"Section 1172.75, subdivision (d) sets forth detailed instructions for resentencing once a sentence has been recalled. . . . [S]ubdivision (d) specifies: 'Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. . . .' (*Id.*, subd. (d)(1).)  The trial court must 'apply the sentencing rules of the Judicial Council' as well as 'any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.' (*Id.*, subd. (d)(2).)  In addition, the court may 'consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.' (*Id.*, subd. (d)(3).)" (*Rhodius*, *supra*, 17 Cal.5th at p. 1055.)

*Appealability of Order Recalling Respondent's Sentence*

"The prosecution's right to appeal in a criminal case is strictly limited by statute.  [Citation.]  Long-standing authority requires adherence to these limits even though [] 'the People may thereby suffer a wrong without a remedy.'  [Citation.]  The circumstances allowing a People's appeal are enumerated in section 1238." (*People v. Chacon* (2007) 40 Cal.4th 558, 564.)

6

The People contend the trial court's order recalling respondent's sentence is appealable under section 1238, subdivision (a)(5), which provides that the People may take an appeal from "[a]n order made after judgment, affecting the substantial rights of the people." "'"[T]o affect the People's substantial rights[,] an order 'must in some way affect the judgment or its enforcement or hamper the further prosecution of the particular proceeding in which it is made.'" [Citation.]' [Citations.] [¶] Applying this standard, our courts have generally held that section 1238, subdivision (a)(5) authorizes the People to appeal orders that affect the defendant's sentence or the timing of his or her release. [Citations.]" (*In re Anthony* (2015) 236 Cal.App.4th 204, 211-212.)

The trial court's order recalling respondent's sentence did not merely "affect" his sentence; it vacated the entire sentence. (*People v. Rogers* (2025) 108 Cal.App.5th 340, 360 (*Rogers*) ["A recall 'effectively vacate[s] [the defendant]'s original sentence and commitment'"].) After a defendant's sentence has been recalled, the trial court *must* resentence him. Section 1172.75, subdivision (c) provides that, if the trial court determines that the judgment includes an invalid section 667.5, subdivision (b) enhancement, "the court *shall* recall the sentence and resentence the defendant." (Italics added.) In other words, the recall of the defendant's sentence automatically results in the resentencing of the defendant.

Respondent argues that "[t]he recall of a sentence does not, by itself, affect a substantial right of the People." (Bold and italics deleted.) In support of his argument, he cites *People v. Griggs* (2025) 109 Cal.App.5th 1231 (*Griggs*). There, the People appealed an order "recalling defendant's sentence . . . under

7

section 1172.1 and assigning the matter for a resentencing hearing." (*Id*., at p. 1233.) The People contended the order was appealable under section 1238, subdivision (a)(5) as an order after judgment affecting the substantial rights of the People.

Section 1172.1, subdivision (a)(1) provides that, under some circumstances, "the court *may* [not shall], on its own motion, . . . recall the [defendant's] sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced . . . ." (Italics added.) The *Griggs* court concluded that the recall order was not appealable because it "merely permits the hearing at which the sentencing court will ultimately decide whether defendant's sentence will change; it does not affect the exercise of the court's discretion." (*Griggs*, supra, 109 Cal.App.5th at p. 1237.)

Unlike *Griggs*, here the trial court's order vacating respondent's sentence did not "merely permit" a resentencing hearing. It required a resentencing hearing at which the court's exercise of its discretion will be affected. The resentencing "shall result in a lesser sentence than the one originally imposed . . . unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).)

*People v. Montellano* (2019) 39 Cal.App.5th 148 (*Montellano*), is also distinguishable. There, the appellate court held that a postjudgment order finding the defendant eligible for resentencing under section 1170.126 was not appealable. The court concluded that the "eligibility determination did not affect the substantial rights of the People by altering the underlying

8

judgment, its enforcement, or the defendant's relationship to it . . . ."[5] (*Montellano*, at p. 151.)

The *Montellano* court reasoned: "[A] trial court's adjudication of a petition for resentencing under section 1170.126 requires a two-step process. In the first step, defendant bears the burden of demonstrating eligibility. If the defendant satisfies his or her burden, the burden then shifts to the prosecution, in the second step, to demonstrate that the defendant is unsuitable for release. Resentencing, however, occurs only *after the second step is completed* and only if the trial court determines that the defendant does not pose an unreasonable risk to public safety." (*Montellano*, *supra*, 39 Cal.App.5th at p. 156.) Section 1170.126, subd. (f) provides: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced . . . *unless* the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.)

Unlike section 1170.126, section 1172.75 requires the recall of the sentence and the resentencing of the defendant if "the current judgment includes an [invalid] enhancement" under section 667.5, subdivision (b). (§ 1172.75, subd. (c).) The court cannot avoid resentencing by determining that it would pose an

---

[5] *Montellano* disagreed with *People v. Superior Court (Martinez)* (2014) 225 Cal.App.4th 979, which concluded that "the initial eligibility determination" under section 1170.126 is appealable as "'[a]n order made after judgment, affecting the substantial rights of the people.' [(§ 1238, subd. (a)(5).)]" (*Id.*, at p. 987.)

9

unreasonable risk of danger to public safety.  The court must resentence the defendant, but it is not required to impose a lesser sentence if it "finds by clear and convincing evidence" that doing so "would endanger public safety."  (*Id.*, subd. (d)(1).)

Accordingly, the People need not wait to appeal until after respondent has been resentenced.

*Did the Legislature Intend that a Defendant Sentenced to Death Be Eligible for Recall and Resentencing under Section 1172.75?*

Respondent's eligibility for recall and resentencing under section 1172.75 involves a matter of statutory interpretation.  "Accordingly, we begin with an examination of the relevant provisions, guided by familiar principles.  ""We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."""  [Citation.]"  (*People v. Brown* (2023) 14 Cal.5th 530, 536 (*Brown*).)

"Issues of statutory construction are reviewed de novo." (*Brown, supra,* 14 Cal.5th at p. 536.)  "'[O]ur primary guiding principle is to ascertain the intent of the Legislature to effectuate the purpose of the law.'"  (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.)

In ascertaining the Legislature's intent, "[w]e do not view [the statute] wearing 'horse blinders.'"  (*People v. Lara* (2025) 115

Cal.App.5th 484, 488.) To do so would be an application of the discredited theory of "mechanical jurisprudence" as explicated by Dean Roscoe Pound in 1908. (Reprinted in Aldisert, The Judicial Process (1976) Mechanical Jurisprudence, ch. 2, pp. 303-313.) We view the entirety of the statutes and seek to achieve an end which is neither arbitrary nor irrational.

Section 1171.1, the predecessor of section 1172.75, was added to the Penal Code in 2021 by Senate Bill No. 483. (Stats. 2021, ch. 728, § 3.) It became effective on January 1, 2022.[6] Section 1171.1 was placed in Article 1 of Chapter 4.5 of Title 7 of Part 2 of the Penal Code. Article 1 includes section 1170, subdivision (a)(3), which provides, "Nothing in this article shall affect any provision of law that imposes the death penalty . . . ."

Based on section 1170, subdivision (a)(3), it appears the legislature originally did not intend that section 1172.75 would apply to death penalty cases. Moreover, the statute's application to the death penalty would appear to conflict with section 1172.75, subdivision (d)(1), which provides, "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement . . . ." Where, as here, the death penalty was originally imposed, the elimination of a one-year prior prison term enhancement would not "result in a lesser sentence than the one originally imposed." (*Ibid.*) "Obviously death is qualitatively different from all other punishments and is the

_____

[6] "'Effective June 30, 2022, the Legislature renumbered section 1171.1 to 1172.75' without any substantive changes [(Stats. 2022, ch. 58, § 12)]." (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 669.)

11

'ultimate penalty' in the sense of the most severe penalty the law can impose." (*People v. Hernandez* (1988) 47 Cal.3d 315, 362.)

We also question whether someone sentenced to death with a "one-year" prior can constitutionally escape the death penalty pursuant to section 1172.75, while a person sentenced to death without such a prior has no comparable remedy. If the sentence is death, a one-year prior is meaningless. One would think that, to avoid this inequality of treatment, the Legislature would not have intended to apply section 1172.75 to death sentences.

But in 2024, Senate Bill No. 285 amended section 1172.75 to add subdivision (f), which arguably manifests a legislative intent to apply section 1172.75 to death sentences so long as the defendant was not convicted of a sexually violent offense. The amendment became effective on January 1, 2025. (Stats.2024, ch. 979, § 2.) Subdivision (f) provides: "Commencing on January 1, 2025, an individual who has been convicted of a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code and *sentenced to death* or a life term without the possibility of parole, who, as of January 1, 2025, has not had their judgment reviewed and verified by the sentencing court as provided in subdivision (c), is not eligible for recall and resentencing under this section. This subdivision does not apply retroactively." (Italics added.) If persons sentenced to death are not eligible for section 1172.75 relief, there would have been no need for subdivision (f) to specifically deny relief to persons sentenced to death and convicted of a sexually violent offense.

In *People v. Dixon* (2025) 112 Cal.App.5th 236, 248 (*Dixon*), Division Seven of the Second Appellate District said: "[T]he enactment of section 1172.75, subdivision (f), is significant: It

shows the Legislature thought it necessary to add the new subdivision because the Legislature recognized in 2024 that section 1172.75, as originally drafted, applied to defendants . . . sentenced to death." "Therefore, the pre-2025 version of section 1172.75 applied to persons 'currently serving a term for a judgment' (§ 1172.75, subd. (b)) that included an invalid prior prison term enhancement, including those . . . whose judgment includes a death sentence." (*Id.*, at p. 247.)[7]

The People argue that "respondent is not entitled to relief pursuant to section 1172.75 because [he] is not currently serving a sentence based on a section 667.5(b) enhancement." (Capitalization omitted.) Instead, "[r]espondent is currently serving a judgment of death to which no enhancements are attached."

The People's argument may, at first blush, conflict with subdivision (f)'s apparent recognition that a person in respondent's position may be entitled to a "full resentencing." "A defendant serving a term for a judgment that *includes* a now-invalid enhancement is entitled to resentencing. (§ 1172.75, subds. (a), (c).)"[8] (*Rhodius, supra*, 17 Cal.5th at p. 1055, italics

---

[7] The Supreme Court granted review in *Dixon*. It stated that, "[p]ending review, the opinion of the Court of Appeal . . . may be cited . . . for its persuasive value . . . ." (*People v. Dixon* (Oct. 22, 2025, No. S292223) 2025 WL 2983057, at *1.) The Supreme Court denied "requests for an order directing partial depublication of the opinion . . . ." (*Ibid.*)

[8] Section 1172.75, subdivision (c) provides, "If the court determines that the current judgment *includes* an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant." (Italics added.)

13

added.)  Respondent is currently serving a term for a judgment that includes such an enhancement.  "'The judgment *is* the sentence,'" i.e., the entire sentence, not just the death-penalty portion of the sentence.  (*People v. Flores* (1974) 12 Cal.3d 85, 93, fn. 6.)  "[W]e deem there to be no distinction in the meaning of the phrases 'passing sentence,' 'pronouncing sentence' and 'pronouncing judgment.'  All are deemed to occur at such time as the court imposes sentence, which act constitutes the rendition of judgment." (*Ibid*.)  Neither *Rhodius* nor *Flores* involved the death penalty.  These opinions are "fairly distinguishable" and are not controlling.  (See *People v. Triggs* (1973) 8 Cal.3d 884, 891, overruled on other grounds in *People v. Lilienthal* (1978) 22 Cal.3d 891, 896.)

Respondent, who has not been convicted of a sexually violent offense, claims that subdivision (f) shows he is eligible for recall and resentencing as to his death sentence.  But the Legislature has not explicitly said that a person in his situation is eligible for such relief.  We need not determine whether the legislature intended to authorize the recall of a death sentence.  Irrespective of its intent, respondent's theory is a "bridge too far" because it would eviscerate section 1509.

*Respondent's Death Sentence Cannot be Recalled*
*Because Section 1509 Prevails over Section 1172.75*

Section 1509, subdivision (a) provides, "A writ of habeas corpus . . . is the exclusive procedure for collateral attack on a judgment of death."  In *Dixon, supra*, 112 Cal.App.5th 236, the court concluded that section 1509 prevails over section 1172.75.

Dixon was convicted of first degree murder and two rapes.  He was sentenced to death on the murder conviction.  "The

14

court . . . imposed and stayed execution of . . . four one-year prior prison term enhancements under Penal Code section 667.5, former subdivision (b)." *(Dixon, supra,* 112 Cal.App.5th at p. 240.)  Although Dixon had been convicted of a sexually violent offense, section 1172.75, subdivision (f) did not "apply to [him] because his judgment was reviewed and verified by the superior court before January 1, 2025." (*Dixon,* at p. 248.)

The Court of Appeal "conclude[d] that the superior court had jurisdiction to resentence Dixon [pursuant to section 1172.75] and that the superior court may resentence him on the noncapital portions of his sentence but not on the death sentence." (*Dixon, supra,* 112 Cal.App.5th at p. 240, rev.gr.)  The court reasoned as follows: "The 'exclusive procedure for collateral attack on a judgment of death' is a petition for writ of habeas corpus under section 1509.  (§ 1509, subd. (a).)  Section 1509 was enacted by a voter initiative, the Death Penalty Reform and Savings Act of 2016 (Proposition 66).  Proposition 66 stated it may be amended by the Legislature only by a statute that passes each house of the Legislature by a three-fourths vote.  (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 66, § 20, p. 218;[9] see Cal. Const., art. II, § 10, subd. (c) ['The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval.'].)  Because Senate Bill No. 483, which enacted section 1172.75 [in 2021], passed the Assembly and the Senate with less than a three-fourths vote, it cannot have amended Proposition 66." (*Dixon*, at p. 249.)

---

[9] The Proposition 66 Voter Information Guide is hereafter referred to as the "Ballot Pamphlet."

The key issue is whether a section 1172.75 proceeding to recall a death sentence and resentence the defendant is a collateral attack on the judgment of death. "When a judgment is attacked in a manner other than by a proceeding in the original action to have the judgment vacated, reversed, or modified, . . . the attack is a 'collateral attack.'" (50 Corpus Juris Secundum (2025) Judgments § 700.) "A direct attack upon a judgment or order is usually one made in the same proceeding by appeal . . . . A collateral attack is an attempt to avoid the effect of a judgment or order made in some other proceeding." (*Rico v. Nasser Bros. Realty Co.* (1943) 58 Cal.App.2d 878, 882; accord, *F.E.V. v. City of Anaheim* (2017) 15 Cal.App.5th 462, 471.)

Respondent argues, "[A section] 1172.75 proceeding is not a collateral attack under California law. It is neither collateral, as this proceeding[] arises from within the criminal case itself, nor is it an attack, as it is court-initiated[] and does not challenge the legality of either Respondent's conviction or sentence."

We disagree. Regardless of who initiated the section 1172.75 proceeding in the present case, it is an attack on the judgment of death. Respondent fully participated in the proceeding and vigorously challenged the death sentence. In its ruling the trial court noted: "[Respondent] claims that he is entitled to a full resentencing based upon Penal Code section 1172.75 and asks the Court to strike all of the special circumstances from his conviction . . . . [Respondent] filed a Memorandum in support of Resentencing asking for a sentence of no greater than life without parole based upon his youth at the time of the crime, childhood trauma, neglect and abuse suffered,

16

and his now-known cognitive impairments."[10]  The trial court's recall of respondent's entire sentence nullified the judgment of death and required that respondent be resentenced on the two special circumstance murder convictions.  (*Rogers, supra,* 108 Cal.App.5th at pp. 360, 364.)

The attack on the judgment of death was collateral to the original criminal action against respondent.  That action ended after the California Supreme Court had affirmed the judgment of death and respondent had exhausted his federal remedies.  "A California state court judgment of death becomes 'final' upon the United States Supreme Court's denial of a capital defendant's petition for writ of certiorari filed by the defendant after our affirmance of the judgment of death, or upon expiration of the time in which the defendant may seek certiorari in the federal high court."  (*In re Zamudio Jimenez* (2010) 50 Cal.4th 951, 956.)

Moreover, the application of section 1172.75 to death sentences is contrary to the electorate's intent as indicated in the official Ballot Pamphlet's analysis of Proposition 66 and argument in favor of the proposition.  When interpreting a voter initiative, "our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.'"  (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.)  "'When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained

---

[10] During oral argument before this court, respondent's counsel said that, if we allow the trial court to resentence respondent as to the judgment of death, respondent will request that a sentence of 50 years to life be imposed for the two murder convictions.

17

in the official ballot pamphlet.". . ."'" (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)

"[W]e consider the Legislative Analyst's views because we assume the voters considered them along with the other materials in the ballot pamphlet." (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 580.) In his report on Proposition 66, the legislative analyst stated that there are "**Two Ways to Challenge Death Sentences**." (Ballot Pamphlet, p. 104.) One is by direct appeal to the California Supreme Court, and the other is by a petition for a writ of habeas corpus. (*Ibid.*) A voter who read the analysis would have reasonably believed that a death sentence could not be challenged by other means, such as a statute subsequently enacted by the Legislature.

The argument in favor of Proposition 66 said the measure "brings closure to the families of victims." (Ballot Pamphlet, p. 108.) How could "closure" be achieved if years or even decades after a judgment of death became final, the legislature could abrogate a defendant's death sentence by enacting a statute such as section 1172.75? It is inconceivable that the voters intended to allow a court to recall a death sentence and resentence the defendant merely because the original sentence included an invalid one-year enhancement for a prior prison term.

*Disposition*

The order recalling respondent's death sentence is reversed. The order recalling the noncapital portions of his sentence is affirmed. The matter is remanded to the trial court for resentencing on the noncapital portions. After the resentencing has been completed, the trial court shall prepare an

amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PUBLICATION


                              YEGAN, J.


We concur:


        GILBERT, P. J.


        CODY, J.

Paul W. Baelly, Judge
Superior Court County of Ventura

———————————————————————

Erik Nasarenko, District Attorney, Michelle J. Contois, Deputy District Attorney, for Plaintiff and Appellant.

Cuauhtemoc Ortega, Federal Public Defender, Michael Petersen and Jennifer Friedman, Deputy Federal Public Defenders, for Defendant and Respondent.