[No. A030751. First Dist., Div. One. July 16, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN DONALD DeCOSSE, Defendant and Appellant.

406

**COUNSEL**

Carolyn Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Josanna Berkow, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, Acting P. J.**—Defendant Steven Donald DeCosse (*De-Cosse*) was convicted by a jury's verdicts of the crimes of possession of methamphetamine for sale (Health & Saf. Code, § 11378), carrying a concealed firearm upon his person (Pen. Code, § 12025), and carrying a loaded firearm on his person while in a public place in an incorporated city (Pen. Code, § 12031). He appeals from the judgment entered on the jury's verdicts.

We affirm the judgment for the reasons we now state.

The appeal's principal contentions relate to *DeCosse's* unsuccessful Penal Code section 1538.5 motion to suppress certain evidence deemed essential to his conviction.

Our authority on such a contention is stated by *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961], as follows: "In *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. In the first step the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by *substantial evidence*.' [Our italics.]

"No less important, however, is the second step of the process. As we observed in *Lawler*, 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' (*Ibid.*) Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, we explained, in such review it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' (*Ibid.*) On that issue, in short, the appellate court exercises its independent judgment."

"*Evidence, to be 'substantial'* [our italics] must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.'" (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]; *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].) ▇ And when a jury's verdict or a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is *substantial evidence*, contradicted or uncontradicted, which will support the finding of fact, and when two or more inferences can reasonably be deduced from the facts as found, a reviewing court is without power to substitute its deductions for those of the trial court or jury. *It is of no consequence that the trier of fact believing other evidence, or drawing different inferences, might have reached a contrary conclusion.* (*People* v. *Johnson, supra,* 26 Cal.3d 557, 576-577; *Grainger* v. *Antoyan* (1957) 48 Cal.2d 805, 807 [313 P.2d 848].)

▇ We consider the first two of *DeCosse's* contentions as they are phrased by him: "The initial detention of appellant was unlawful as it exceeded the bounds of time or reason necessary to stop him [and] the exploratory search of the truck was unjustified and beyond the scope of that permitted for minor traffic violations."

For some reason not apparent from the record, the municipal and superior court proceedings on the several charges were inordinately time taking and delayed. Witness' recollection of the events leading up to *DeCosse's* arrest differed in some respects from hearing to hearing and to trial. We state the material and relevant evidence as it reasonably could have been, and presumably was, found true by the superior court on the motion to suppress.

Police Officer Conway had been advised by the narcotics bureau that one Walker was heavily involved with narcotics or dangerous drugs, that he had a prior police record, that he had a "fondness for weapons" and to "be careful" of him. And Officer Conway "knew" defendant *DeCosse*. Fol-

lowing such information Officer Conway had occasion to make a here unchallenged stop of a black pickup truck. It was occupied by Walker, and by *DeCosse* whom the officer "recognized." A "warrant check" disclosed outstanding warrants against the vehicle, but the car and its occupants were nevertheless allowed to depart without further incident. The vehicle stop was reported to police headquarters, and the officer was told that the county sheriff's office was presently working on a case in which both Walker and *DeCosse* were "heavily involved in dealing drugs."

Soon thereafter a citizen told Officer Conway "that a black pickup truck had driven by and some garbage had come off the truck or fallen off the truck, he wasn't sure, but it landed in front of his house." The truck was described as containing "a bed, sleeping type bed in the back of it." A few minutes later and a short distance away the officer observed such a pickup truck with its described contents. Standing alongside it were *DeCosse* and Walker. Each produced driver's licenses, and they admitted that the garbage "had probably fallen off the truck." Probable violations of Penal Code sections 374b and 374b.5, misdemeanors, thus appeared. And the vehicle's registration was found *not* to be in the name of *DeCosse* or Walker. The officer decided to, and did, make a "warrant check" of the pickup truck's occupants.

*DeCosse* then said he wished to return to his vehicle for a cigarette, and to be sure that *DeCosse* obtained *only* a cigarette from the vehicle, the officer accompanied him. As *DeCosse* opened the pickup truck's door, in plain view in the door's "map compartment" the officer observed what appeared to be, and was, an opened alcoholic beverage container. There thus appeared a probable violation of Vehicle Code section 23223. The officer and *DeCosse* returned to the rest of the group. Then, as testified by the officer: "I decided that I was going to go back in the truck and take the bottle and cite him for the possible violation at the time and I went back, opened the driver's door, and the—leaned into the cab and between the center console I noticed a bullet, .38 caliber bullet, in a small Zip Loc bag on the top of the console. And at that point I kind of backed away and radioed for another unit thinking that I was probably dealing with two armed subjects now."

After calling for the police backup the officer went back to the pickup truck looking for further evidence of weapons. In a brown paper bag he found a bottle of white powder; it turned out *not* to be contraband. Backup police officers soon arrived, and it was decided to make a weapon search of *DeCosse* and Walker. Upon the officer's statement that he was going to search for guns or other weapons, *DeCosse* broke away and ran. As he did so the officer could see that: "He was reaching around behind his back and

underneath he had a jacket on, short waist jacket. He was reaching behind his back underneath the jacket at that time. . . . All I could see is he was reaching for something." Soon *DeCosse* stumbled and fell, and he was apprehended and secured by the officer.

Believing that in his flight *DeCosse* had thrown something away from his person the officer retraced *DeCosse's* flight path. In doing so he found "a loaded .380 semi-automatic pistol," and a bandana handkerchief which contained the methamphetamine of one of the charges against him. And the handgun was the basis of the other charges. They, and statements thereafter made by *DeCosse*, were the subjects of the superior court motion to suppress.

Adverting now to the instant contentions, we note that the citizens report of a law violation was presumably reliable (*People* v. *Smith* (1976) 17 Cal.3d 845, 852 [132 Cal.Rptr. 397, 553 P.2d 557]; *People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814-815 [124 Cal.Rptr. 585]), and the officer was duty bound to investigate. (*In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Flores* (1974) 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353].) Upon observing the vehicle described by the citizen, the officer properly made inquiry of its recent occupants standing alongside it. "A police officer may stop and question persons on public streets, including those in vehicles, when the circumstances indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of the officer's duties." (*People* v. *Flores, supra,* 12 Cal.3d 85, 91.) And, "'it is not unreasonable for officers to seek interviews with suspects. . . .'" (*People* v. *Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855].)

At that point the officer was aware of (1) the men's police records, (2) that they were operating a motor vehicle owned by neither of them, (3) that they had probably violated a criminal statute a few minutes before, and (4) that at least one of them had a "fondness for weapons." It was eminently reasonable for the officer to make a warrant check "for the combined total of things," as stated by him. The warrant check "took probably five minutes or so; it was probably not that long." And it was surely reasonable under the circumstances, while waiting for the warrant check's result, for the officer to accompany *DeCosse* when he went back to the vehicle for a "cigarette," lest he pick up a weapon instead.

Standing where he had a right to be, the officer was lawfully entitled to observe, in plain sight, the opened alcoholic beverage container. (See *People* v. *Superior Court (Peck)* (1974) 10 Cal.3d 645, 648 [111 Cal.Rptr. 565, 517 P.2d 829].) Probable cause then existed for an arrest of *DeCosse*,

or at least a citation, because of the presence of the observed contraband. ▮▮ And the contraband clearly established, under all of the circumstances apparent to the officers, probable cause for search of the vehicle for other contraband, and for weapons. (*Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297, 308 [155 Cal.Rptr. 559, 594 P.2d 984]; *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417].) Upon observing the live bullet, the officer at that point, if not before, had palpable reason to search *DeCosse* for weapons. "[E]ven when the charge will be resolved by a mere citation a patdown search for weapons is permissible if the officers are required to travel in proximity with the arrestee." (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 727 [195 Cal.Rptr. 503, 669 P.2d 1278].) ▮▮▮▮ And when, and after, *DeCosse* took flight to avoid the weapons search, probable cause patently existed for his arrest.

We discern neither Fourth Amendment, nor other constitutional or statutory violation, from the facts as found by the trial court, in the police officer's complained of conduct.

▮▮▮ *DeCosse's* remaining appellate contention is that: "Remoteness of the prior conviction made its admission an abuse of discretion."

No argument is made that the superior court did not exercise its Evidence Code section 352 discretion in ruling upon *DeCosse's Beagle* motion. Indeed, the record makes clear that the court *did* so exercise its discretion. And it appears that *DeCosse's* only superior court contention was that his prior burglary conviction was *remote;* it had been suffered about 12 years before the trial.

*DeCosse's Beagle* motion and trial occurred *after* adoption of Proposition 8 (article I, section 28, of California's Constitution) by the state's electorate, but *before* the high court's decision in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. *Castro,* as we read it, held that on such *Beagle* motions, Evidence Code section 352 discretion still resided in trial courts under Proposition 8. (38 Cal.3d at p. 312.) Further, the high court ruled that the electorate's intent was to "reject the rigid, black letter rules of exclusion which we [i.e., the state's high court] had grafted onto the code by the *Antick* [*People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43] line of decisions." (38 Cal.3d at p. 312.) And the high court stated that "the initiative itself *expressed continued trust in the discretion of the trial courts.*" (Our italics; 38 Cal.3d 312.)

*Antick* held that 16- and 18-year-old prior convictions were *remote* and inadmissible for impeachment (15 Cal.3d at pp. 96-99). That holding, as pointed out, was "rejected" by *Castro,* and by Proposition 8. The prior

conviction with which we are concerned on this appeal was *12 years old*. For the reasons stated by *Castro,* any contention that it was necessarily remote and therefore inadmissible must also be rejected.

The allowance of *DeCosse's* prior conviction for impeachment thus lay within the sound discretion of the superior court. That discretion *was* exercised, and it does *not* appear to have been abused.

The judgment is affirmed.

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied August 14, 1986, and appellant's petition for review by the Supreme Court was denied October 2, 1986.