[No. D020115. Fourth Dist., Div. One. Mar. 10, 1995.]

In re JOSEPH G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH G., Defendant and Appellant.

**COUNSEL**

Jan Stiglitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KREMER, P. J.**—Joseph G. appeals the juvenile court's order declaring him a delinquent minor following true findings he carried a loaded firearm at

school, carried a loaded firearm in a public place and carried a concealed weapon (Pen. Code, §§ 626.9,[1] subd. (a), 12031, subd. (a)(1), 12025, subd. (a)(2)).

On the afternoon of Wednesday, October 20, 1993, the vice-principal at Mt. Miguel High School received a call from a parent of a student. The caller apparently identified herself but asked for confidentiality because she feared for her son's safety. She told the vice-principal her son had seen Joseph with a pistol at a high school football game the previous Friday evening. She explained she was reporting the incident in the interests of safety.

Because all the students had left for the day, the vice-principal waited until the next morning to open Joseph's locker. The vice-principal was accompanied by a campus security guard. Inside Joseph's locker they found only books. They closed the locker and went to a neighboring classroom to prepare the class for in-school suspension.

When the vice-principal and security guard left that classroom about five minutes later, they saw Joseph putting a backpack into his locker. They waited a few minutes until the next class had begun and then opened the locker. Inside Joseph's backpack they found a loaded handgun.

The court denied Joseph's motion to suppress evidence. (Welf. & Inst. Code, § 700.1.) Joseph contends the court erred in denying the motion, in entering true findings of both carrying a gun in a public place and carrying a gun on school grounds and in failing to stay disposition for carrying a gun in a public place (§ 654).

## DISCUSSION

### I

 Joseph contends the court erred in denying his motion to suppress evidence.

 On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. (*Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 10, fn. 7 [109 Cal.Rptr. 684, 513 P.2d 908].) We must uphold those express or implied findings of fact by the trial court which are supported by substantial evidence and independently determine

---

[1]All statutory references are to the Penal Code unless otherwise specified. Sections 626.9 and 12031 refer to former Penal Code sections.

whether the facts support the court's legal conclusions. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961].)

" 'The Fourth Amendment proscribes all unreasonable searches and seizures, . . .' [Citations.]" (*In re Tyrell J.* (1994) 8 Cal.4th 68, 76 [32 Cal.Rptr.2d 33, 876 P.2d 519].) "The balancing of competing interests to determine the scope of Fourth Amendment protections in a particular setting is well settled. Whether a particular search is reasonable depends on a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' [Citation.]" (*In re William G.* (1985) 40 Cal.3d 550, 563 [221 Cal.Rptr. 118, 709 P.2d 1287].) " '[I]t is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." ' [Citations.]" (*In re Tyrell J., supra,* 8 Cal.4th at p. 76.)

In *New Jersey* v. *T.L.O.* (1985) 469 U.S. 325 [83 L.Ed.2d 720, 105 S.Ct. 733], the Supreme Court recognized an exception to the warrant and probable cause requirement for searches conducted by public school officials. The Supreme Court balanced the privacy interests of the students against "the substantial need of teachers and administrators for freedom to maintain order in the schools" and concluded a search of a student would be justified at its inception "when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of school." (*Id.* at pp. 341-342 [83 L.Ed.2d at pp. 734-735], fn. omitted.) The United States Supreme Court further stated: "[s]uch a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." (*Id.* at p. 342 [83 L.Ed.2d at p. 735], fn. omitted.)

The California Supreme Court in *In re William G., supra,* 40 Cal.3d at page 564, elaborated the standard necessary to support a search by school officials of a student:

"There must be articulable facts supporting that reasonable suspicion [that the student or students to be searched have engaged, or are engaging, in a proscribed activity (that is, a violation of a school rule or regulation, or a criminal statute)]. Neither indiscriminate searches of lockers nor more discreet individual searches of a locker, a purse or a person, here a student, can take place absent the existence of reasonable suspicion. Respect for privacy is the rule—a search is the exception.

"In sum, this standard requires articulable facts, together with rational inferences from those facts, warranting an objectively reasonable suspicion that the student or students to be searched are violating or have violated a rule, regulation, or statute. [Citation.] The corollary to this rule is that a search of a student by a public school official is unlawful if predicated on mere curiosity, rumor, or hunch. [Citation.]"

 Joseph contends the vice-principal searched his locker without a reasonable belief it contained the gun. He claims the search was unreasonable because the information he had a gun came from an anonymous source and the information was remote in time and place. He further asserts that even if the first search were lawful, there was no cause to search the locker the second time.

Initially, we observe, it does not appear the parent was actually anonymous. During the cross-examination of the vice-principal, after defense counsel confirmed the caller was a woman, counsel asked, "Who was that person?" The vice-principal responded, "Well, she asked for confidentiality. Shall I give her name?" At this point, a discussion ensued between court and counsel as to whether the court should require the name be revealed. The court declined to order disclosure of the caller, having concluded the need to protect the safety of children at school outweighed the benefit of disclosing the caller's name. Thus, it appears from the vice-principal's response about whether he should reveal the caller's name and the subsequent discussion between court and counsel that the caller identified herself.

Further, the fact a school official does not know or remember the name of an individual reporting a violation of the law, particularly involving handguns, is but one factor for a court to assess in determining whether a search was reasonable. The court in *In re Alexander B.* (1990) 220 Cal.App.3d 1572 [270 Cal.Rptr. 342] addressed this issue.

In *Alexander B.*, school officials separated two groups of boys who appeared about to engage in a fight. As the boys were being taken to the school office, an unnamed boy said, " '[d]on't pick on us; one of those guys has a gun' " and gestured to another group of boys who had been on the sidelines but yelling and making gang signs. A school official asked a nearby police officer to check the third group of boys because " '[o]ne of them is supposed to have a weapon.' " (220 Cal.App.3d at p. 1576.) The officer ordered the group of boys to sit. When the defendant refused to stop talking, stood up and started to walk away, the officer wrestled him to the ground and eventually discovered he was carrying a machete knife and scabbard. The defendant challenged the search. The *Alexander B.* court, in

addressing the fact the information about the supposed weapon came from an unidentified student and was directed at a group of students, stated: "The fact that the student's name was either not obtained by school authorities, or obtained and later forgotten was only one of many factors bearing on the reasonableness of the search. Of greater importance is the fact that the gravity of the danger posed by possession of a firearm or other weapon on campus was great compared to the relatively minor intrusion involved in investigating the veracity of the unidentified student's accusation against a handful of high school age boys." (*Id.* at p. 1577.)

Here, the school official had information from an adult who identified herself. Not only was she identified, but she was also calling out of concern for the safety of her son and other children. Her motive for calling is a factor tending to show she was more reliable than the student in *Alexander B.* who was complaining about being "picked on." Further, unlike the situation in *Alexander B.*, the caller here did not merely point to a group of students as possibly being armed, but named a particular individual. Moreover, the mother here was a "citizen-informant," i.e., a person whom the law presumes reliably reports crime and whose report should prompt an investigation. (See *People* v. *Smith* (1976) 17 Cal.3d 845, 852 [132 Cal.Rptr. 397, 553 P.2d 557]; *People* v. *DeCosse* (1986) 183 Cal.App.3d 404, 410 [228 Cal.Rptr. 114].) The fact the mother named a particular student, apparently identified herself, and was a citizen-informant are all factors which weigh in favor of investigating the truth of her accusation by the minimal intrusion on Joseph's privacy of opening his locker, particularly when weighed against "the gravity of the danger posed by possession of a firearm or other weapon on campus . . . ." (*In re Alexander B., supra*, 220 Cal.App.3d at p. 1577.) Under these circumstances, a search of Joseph's locker was reasonable.

As to Joseph's complaint the search was unreasonable because it related to an event five days before the search and occurring at another place, we are not persuaded. The interval was from Friday evening to Wednesday afternoon, with the search occurring on Thursday morning. We do not find this interval to be so lengthy as to require a finding, as a matter of law, that the information was stale and insufficient to support the search.

Finally, we find no merit to Joseph's contention that even if the first search was lawful, there was no cause to search the locker a second time. A student who carries a gun to school will generally keep the gun in one of three places: (1) a locker, (2) a backpack or purse or (3) on his person. When the vice-principal and security guard searched Joseph's locker the first time, only books were in the locker. They, however, saw Joseph about five minutes later place his backpack in his locker. The vice-principal's belief

Joseph's gun was in his backpack was reasonable and supported opening the locker a second time to check the contents of the backpack.

In sum, we conclude the vice-principal acted reasonably in response to a parent's call reporting a particular student had been seen with a gun at a school event. Such a report should be taken seriously by school officials who are charged with the safety of their students. School officials should investigate reports that particular students are carrying firearms onto campuses by the minimal intrusion of checking the contents of a student's locker. Such a minimal intrusion is justified particularly when school officials observe the student putting a backpack, a likely place for carrying a gun, into a locker.

II

*Convictions for Possession of a Loaded Firearm in a Public Place and Bringing or Possessing a Loaded Firearm on School Grounds*

■ Joseph contends he cannot be convicted of possession of a loaded firearm in a public place because it is a lesser included offense of bringing or possessing a loaded firearm on school grounds.

An individual may not be convicted of both a greater offense and a necessarily included lesser offense (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595]); "[i]f the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed" (*People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763]).

" 'The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' " (*People* v. *Pearson, supra,* 42 Cal.3d at p. 355; *People* v. *Miranda* (1994) 21 Cal.App.4th 1464, 1467 [26 Cal.Rptr.2d 610].) The analysis of whether an offense is necessarily included "is conducted in the abstract, without reference to the pleadings or facts of the particular case. [Citation.]" (*People* v. *Rush* (1993) 16 Cal.App.4th 20, 23 [20 Cal.Rptr.2d 15].)

The offense of bringing or carrying a loaded firearm on school grounds is defined in section 626.9, subdivision (a) as follows: "Any person who brings or possesses a loaded firearm upon the grounds of, or within, any public school . . . , unless it is with the written permission of the school district superintendent, his or her designee, or equivalent school authority, shall be punished by imprisonment in the state prison for two, three, or four years."

The offense of possessing a loaded firearm is defined in section 12031, subdivision (a)(1) as follows: "Except as provided in subdivision (b), (c), or (d), every person who carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor."

When viewing the statutes in the abstract, it is clear section 12031, subdivision (a)(1) is not a necessarily included offense of section 626.9 because it contains an additional element not required by section 626.9, i.e., that an individual carry the loaded firearm on his or her person or in a vehicle. Section 626.9 requires only that the individual be in possession of the loaded firearm on school grounds. In looking at the statute in the abstract, it is possible for an individual to be convicted of violating section 626.9 without also violating section 12031, subdivision (a)(1). For example, one student could carry the firearm onto school grounds and place it in another student's locker. In such a scenario the second student would have possession of the firearm on school property without ever having had the firearm on his person or in a vehicle.

We conclude Joseph was properly convicted of violating both section 626.9 and section 12031, subdivision (a)(1).

III

*Multiple Punishment*

Joseph contends the court erred in failing to stay the punishments for the section 12031, subdivision (a)(1) offense of carrying a loaded firearm in a public place and the section 12025, subdivision (a) offense of carrying a concealed weapon. He contends the punishments for those offenses should have been stayed pursuant to section 654 because they were based on the same act as the section 626.9, subdivision (a) offense of carrying a loaded firearm on school grounds.

Section 654 prohibits multiple punishment for an indivisible course of conduct even though it violates more than one statute. (*People* v. *James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135].) Whether a course of conduct is indivisible depends on the intent and objective of the actor. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1216 [23 Cal.Rptr.2d 144, 858 P.2d 611]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but

not for more than one." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) On appeal, the court may stay the effect of the judgment as to the lesser offense so far as the penalty alone is involved. (*People* v. *Lee* (1980) 110 Cal.App.3d 774, 785 [168 Cal.Rptr. 231].)

Here, Joseph is correct in his argument that he may not be punished for all three offenses since each offense is based on the same act of carrying a loaded firearm. However, as the Attorney General points out, there is no need for us to correct the court's order because the court here did not impose a sentence; the court ordered probation and placed Joseph in his parents' custody. Only when a court orders a minor removed from the physical custody of his parent or guardian is the court required to specify the maximum term the minor can be held in physical confinement. (Welf. & Inst. Code, § 602.)[2]

No reversal or remand is required on this ground.

## DISPOSITION

The judgment is affirmed.

Froehlich, J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 1995.

---

[2] We note here the court advised Joseph "the maximum term for Count 01 is 3 [years], Count 02 is 6 [months]; Count 03 is 6 [months]" for an "overall maximum period of confinement [of] 3 [years], 4 [months]." The maximum period of confinement here is actually four years since section 626.9 provides for an upper term punishment of four years.