127 Cal.Rptr.2d 243 (2002)
103 Cal.App.4th 923
The PEOPLE, Plaintiff and Respondent,
v.
Stephen PHELPS, Defendant and Appellant.
No. C038176.
Court of Appeal, Third District.
November 15, 2002.
Rehearing Granted December 16, 2002.[*]
*245 Marilyn Drath, San Rafael, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Senior Assistant Attorney General, Stephen G. Herndon and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.
*244 MORRISON, J.
A jury convicted defendant Stephen Phelps of making criminal threats (Pen. Code, § 422[1]), a felony, failure to appear while on bail (§ 1320.5), a felony, and two counts of violating a court order (§ 273.6, subd. (a)), a misdemeanor. The trial court found that defendant had been released from custody (on bail) when he committed the failure to appear. (§ 12022.1.) The court sentenced defendant to state prison for an aggregate term of five years and eight months.
On appeal, defendant claims the trial court erred by: (1) allowing the prosecutor to consolidate the felony charges; (2) imposing multiple punishments for failure to appear and the section 12022.1 enhancement; and (3) imposing multiple punishments for one count of violation of a court order and for making criminal threats. Although there is no merit in defendant's first claim (regarding consolidation of the charges), the remaining two claims are persuasive. We shall modify the judgment accordingly.

FACTUAL AND PROCEDURAL
BACKGROUND
Criminal charges were initially filed against defendant in different superior and municipal court cases. The prosecutor moved to consolidate the cases before trial. The trial court granted the motion, and the prosecutor filed a single information charging five counts: count 1, making criminal threats (§ 422), counts 2 and 3, violation of a court order (§ 273.6, subd. (a)), count 4, exhibiting a deadly weapon in a rude, angry, or threatening manner (§ 417, subd.(a)(1)), and count 5, failure to appear while on bail (§ 1320.5), with an enhancement alleging defendant had been released from custody on another felony charge at the time of the offense (§ 12022.1).
Defendant was convicted of all charges except count 4 (exhibiting a deadly weapon). A brief summary of the facts, as adduced at trial, will suffice for an understanding of the issues on appeal.

Prosecution's Case
Defendant and Kally Phelps married in 1985, had three children together, and remained *246 married for 12 years. According to Kally, the last year of their marriage was "very volatile" and "violent." For example, one time defendant threw Kally down on the floor, threw something at her head, and beat her head against the floor. Another time, defendant hit her so hard her tooth went through her lip. In yet another incident, defendant assaulted his elderly mother after she chastised him for hitting Kally. Kally described additional incidents that reveal a pattern of threatening, destructive, and often violent behavior on defendant's part.
Kally ultimately secured a permanent restraining order against defendant in March 1998, that covered both herself and the children. Kally was given sole legal and physical custody of the children later in 1998. Defendant was, however, allowed to visit the children with supervision on some occasions.
Defendant violated the permanent restraining order several times. Once, defendant came to a softball game in which Kally was participating. Defendant also repeatedly made threatening and insulting telephone calls to Kally.
The first charged offenses (counts 1 and 2) occurred on March 16, 1999. Defendant telephoned Kally and left a message in which he was yelling and screaming. At one point, defendant referred to a "vision" and said, "KKK. Kill Kally's kids." At the time, the children were shopping with defendant's mother. Kally was concerned because defendant had previously said the children and her "would be better off dead" than if their family broke up. Kally went looking for the children and brought them home. Defendant left another message the next morning in which he expressed anger about not being able to see the children. Tapes of the messages were played to the jury.
The next charged offense (count 3) occurred on August 27, 1999. At night, defendant went to Kally's parents' house, where the children were sleeping. Kally's sister was asleep in the family room with the children when she awoke to the sound of tapping on the window. Defendant was outside, looking in the window, and calling the children's names. Kally's sister went upstairs and woke up her parents.
Kally's father spoke with defendant at the front door. Defendant said he was going on a trip and wanted to see his children before he left. Kally's father told defendant he could not see the children and closed the door. Defendant went back to the window momentarily before leaving. When he was subsequently detained by police, defendant indicated he had gone to the house to "say good-bye."
The next charged offense (count 4, of which defendant was not convicted) occurred on February 8, 2000. Defendant spoke with Kally's father at a tire store. According to Kally's father, defendant complained about Rally, indicated she should be punished, and referred to himself as "a celestial warrior." Defendant purportedly drew a knife at one point and demonstrated how he would harm someone he thought Rally was dating.
Finally, on March 1, 2000, defendant failed to appear in court after having been released on bail (count 5). That night, a patrol officer from the Sacramento County Sheriffs Department, Nathan Wise, was dispatched to a river-area location on report of a suspicious and disoriented person who had been going door-to-door in a nearby neighborhood. Wise encountered defendant and asked him who he was. Defendant did not respond. Defendant put his hands in his pockets and did not comply when Wise told him not to do so. Wise grabbed one of defendant's hands, but defendant pulled away and assumed "a *247 fighting stance." Wise sprayed defendant's face with pepper spray, but defendant wiped it off, yelled, and started to walk towards Wise. Wise retrieved his baton and waited for backup. Police subsequently restrained defendant.

Defense
Defendant testified on his own behalf. Defendant made several accusations against Kally. For example, he testified that she committed adultery many times while they were married. He also claimed that she began to use drugs heavily in 1997. Defendant denied most of the allegations of domestic abuse, although he admitted pulling Kally's hair on one occasion about three years earlier. Defendant claimed that in 1998 and 1999, Kally continued to call him and they had sexual relations on several occasions.
Defendant claimed he left the phone message on March 16, 1999, because he was angry with Kally. Defendant claimed the message was not a threat and that he was trying to explain that Kally was killing the spirits of the children and his relationship with them. Defendant claimed he went to Kally's parents' house in August 1999 because he wanted to make arrangements to contact the children while he was out of state; he did not think they would be at the house at the time. Defendant admitted speaking with Kally's father at the tire store. But he claimed he did not have a weapon and did not mention anyone Kally was dating.
Finally, defendant explained that he did not appear in court on March 1, 2000, because he was confused about the court date and because he had the flu and hay fever. Defendant testified, "They called me to say that there was a court date. And I said that I actually thought it was like the 13th or something. The 9th or the 13th. And I said I'm sick. I have the flu. Let me just come in tomorrow." Defendant explained that in the past the case had been postponed, and he had assumed if he came to court the next day his "bail would just be reinstated."
Defendant disputed Officer Wise's account of what happened that night. Defendant explained that he spoke with Wise about whether he (defendant) "was under some kind of warrant or anything like that," and defendant "might have even said [he] missed a court date [that day]." Defendant claimed Wise subsequently pulled out the pepper spray and sprayed him in the face.
As to his testimony that he had been sick, defendant was cross-examined about the fact that he apparently did not mention it at the medical screening when he was booked into jail. Additionally, Officer Wise had testified that it did not appear defendant was suffering from a cold, the flu, or hay fever.

DISCUSSION

I. Joinder
Defendant claims the trial court erred by consolidating the two felony charges: making criminal threats and failure to appear. Defendant objected in the trial court to the consolidation, specifically claiming that the charge of failure to appear was of a different class of crimes than the other charges and that there was "no cross-admissibility [of evidence] whatsoever." The trial court disagreed, emphasizing that defendant's failure to appear could be seen as "an admission by conduct" that showed "consciousness of guilt." The court also indicated that joinder would not be unfairly prejudicial.
Section 954 provides for the consolidation of different offenses if they are of the same class of crimes or are connected in *248 their commission.[2] With respect to the latter point, the state Supreme Court has emphasized that offenses "`committed at different times and places against different victims are nevertheless "connected together in their commission" when they are ... linked by a "`common element of substantial importance.'"'" (People v. Mendoza (2000) 24 Cal.4th 130, 160, 99 Cal.Rptr.2d 485, 6 P.3d 150.)
Although here, the felony charges occurred on different occasions, they are not unconnected. Significantly, defendant failed to appear in court proceedings involving the criminal threats charge. As the trial court emphasized, defendant's failure to appear in court could reflect consciousness of guilt of pending charges. (See generally People v. Snyder (1976) 56 Cal. App.3d 195, 197-199, 128 Cal.Rptr. 297 [flight instruction proper when reasonable to infer defendant was voluntarily absent from trial].) Depending on its assessment of the underlying circumstances, the jury could have inferred "that defendant's absence was voluntary and it was a fact relevant to the determination as to his guilt or innocence." (Id. at p. 199, 128 Cal.Rptr. 297.) Moreover, the circumstances of the pending charges were pertinent to whether defendant acted with the requisite intent when he failed to appear in court, i.e., "to evade the process of the court." (§ 1320.5.)
And though defendant relies on People v. Madden (1988) 254 Cal.Rptr. 207, 206 Cal.App.3d Supp. 14, that case is distinguishable. Madden was originally released on his own recognizance on a misdemeanor charge of possession of a hypodermic syringe, and he agreed to appear at trial. (Id. at pp. Supp. 15-16, 254 Cal.Rptr. 207.) He failed to appear on the date scheduled for trial but came to court the following day. (Id. at pp. Supp. 16-17, 254 Cal.Rptr. 207.) Madden later testified that he was mistaken about the court date. (Id. at p. Supp. 17, 254 Cal.Rptr. 207.) On these facts, the appellate department of the Los Angeles Superior Court held it was improper to join the misdemeanor possession charge with a misdemeanor charge of failure to appear. (Id. at pp. Supp. 15, 17-19, 254 Cal.Rptr. 207.) The court emphasized that the charges were not of the same class of offenses nor did they share a "common element of substantial importance." (Id. at pp. Supp. 17-18, 254 Cal.Rptr. 207.) With respect to the latter point, the court explained: "The only connection between failure to appear and possession of a hypodermic syringe is that, had appellant not been charged with the possession offense, there would not have been a trial date for appellant to miss. This, of course, is not enough. If it were, the nature of the underlying charge would be irrelevant and the legislative intent behind *249 Penal Code section 954 would be vitiated." (Id. at p. Supp. 18, 254 Cal.Rptr. 207.)
There are important distinctions between the instant case and People v. Madden, supra, 254 Cal.Rptr. 207, 206 Cal. App.3d Supp. 14. Here, defendant did not subsequently come to court on his own volition. Rather, he purportedly responded in a belligerent manner when a police officer spoke with him following his failure to appear in court. Accordingly, the facts are more conducive to finding consciousness of guilt of pending charges. Further, unlike the felony charge in the instant case, the misdemeanor failure to appear charge in People v. Madden did not require a finding that defendant intended to evade the process of the court. (Compare §§ 853.7, 1320.5.) Accordingly, it was less important to show the underlying circumstances of the charge Madden was facing when he did not come to court.
In short, the underlying circumstances of each felony charge were relevant evidence with respect to material issues having to do with the other charge. Accordingly, the charges share a common element or elements of substantial importance and joinder was proper under section 954.
"`Since the requirements for joinder were satisfied, defendant can predicate error only on a clear showing of potential prejudice.'" (People v. Osband (1996) 13 Cal.4th 622, 666, 55 Cal.Rptr.2d 26, 919 P.2d 640.) "Even if the ruling was correct when made, we must reverse if defendant shows that joinder actually resulted in `gross unfairness,' amounting to a denial of due process." (People v. Arias (1996) 13 Cal.4th 92, 127, 51 Cal.Rptr.2d 770, 913 P.2d 980.) Joinder is generally appropriate and nonprejudicial "when the offenses would be cross-admissible in separate trials." (Id. at p. 126, 51 Cal.Rptr.2d 770, 913 P.2d 980.) "In determining potential prejudice from the joint trial of non-cross-admissible charges, the court should evaluate whether (1) certain of the charges are unduly inflammatory, (2) a `weak' case will be unfairly bolstered by its joinder with other charges, and (3) any of the charges carries the death penalty." (Id. at p. 127, 51 Cal.Rptr.2d 770, 913 P.2d 980.)
As we have already indicated, the charges were potentially cross-admissible. Further, an analysis of the remaining factors indicates joinder was not unfairly prejudicial. Although the failure to appear might seem less serious than defendant's pattern of conduct in the other charged offenses, including the criminal threats charge, none of the charges were so egregious as to inflame the jury against defendant. And notwithstanding defendant's attempts to question the strength of the prosecution's case with respect to the failure to appear charge, it does not appear that the prosecution was trying to bolster a weak case. Finally, none of the charges carried the death penalty.
Nor does the analysis change when we consider the outcome of the trial. The jury was instructed that the potentially prejudicial evidence of prior domestic violence was admitted for a limited purpose, with respect to the charge of making criminal threats. The jury carefully assessed each of the charges against defendant individually, as evidenced by the fact that they acquitted him of the misdemeanor charge involving the unlawful display of a knife. Under the circumstances, there is no indication that consolidation caused defendant gross unfairness so as to deny him due process. (See People v. Arias, supra 13 Cal.4th at p. 127, 51 Cal.Rptr.2d 770, 913 P.2d 980.)

*250 II. Failure to Appear and Related Enhancement
Defendant claims the trial court erred by imposing multiple punishments for failure to appear while on bail (§ 1320.5) and the bail/O.R. (own recognizance) enhancement (§ 12022.1). We agree that the Legislature intended the "special" failure to appear statute to apply to the exclusion of the general enhancement and that the enhancement must be stricken. Accordingly, it is unnecessary to consider defendant's related argument that imposition of multiple punishments also violates section 654.[3]
"A settled rule of statutory construction precludes prosecution under a general statute when a more specific one describes the conduct involved." (Finn v. Superior Court (1984) 156 Cal.App.3d 268, 271, 202 Cal.Rptr. 732.) This rule is designed to ascertain and carry out the intent of the Legislature. (People v. Jenkins (1980) 28 Cal.3d 494, 505, 170 Cal. Rptr. 1, 620 P.2d 587.) "The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and `requires us to give effect to the special provision alone in the face of the dual applicability of the general provision ... and the special provision ....'" (Id. at pp. 505-506, 170 Cal.Rptr. 1, 620 P.2d 587.) The doctrine has been applied to enhancement statutes. (See People v. Coronado (1995) 12 Cal.4th 145, 153, 48 Cal.Rptr.2d 77, 906 P.2d 1232, citing In re Shull (1944) 23 Cal.2d 745, 750, 146 P.2d 417.)
The specific statute at issue here, section 1320.5, provides in pertinent part: "Every person who is charged with or convicted of the commission of a felony, who is released from custody on bail, and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony." Thus, the statute describes conduct that facially falls within the terms of the general statute, section 12022.1, which sets forth an enhancement if a defendant commits any felony while released on felony bail or on his or her own recognizance.[4] Under the circumstances, it is difficult to conceive that the Legislature intended section 12022.1 to further enhance a conviction under section 1320.5.
It is of course true that a defendant could be convicted of failure to appear but not the section 12022.1 enhancement. This is because section 1320.5 applies, and section 12022.1 does not, when the defendant is not convicted of the "primary" offense for which he or she has been released on bail. (See § 12022.1, subds. (d), (g); In re Jovan B. (1993) 6 Cal.4th 801, 809, 25 Cal.Rptr.2d 428, 863 P.2d 673.) But this distinction is not dispositive for at least two reasons.
First, application of the special/general rule does not require that every case involving a violation of the special statute will necessarily result in a violation of the general statute. The special/general rule applies when "`each element of the "general" statute corresponds to an element *251 on the face of the [special] statute' or `it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute.'" (People v. Coronado, supra, 12 Cal.4th at p. 154, 48 Cal. Rptr.2d 77, 906 P.2d 1232, italics added.) Given the substantial overlap of the statutes, a violation of section 1320.5 will "commonly result" in a violation of section 12022.1.
We reject the People's arguments to the contrary. The People claim defendant "presents nothing demonstrating empirically" that a defendant who is charged, released on bail, and fails to appear in court "will virtually always be convicted on that prior charge at all, and much less that the conviction for the prior ultimately will be for a felony." There is no requirement that a violation of the general statute will "virtually always" result in a violation of the special statute; the question is merely whether such a violation will commonly result. The People further suggest that "it may well be that the common result will be a misdemeanor guilty plea on the prior in light of the prosecution's satisfaction with the felony section 1320.5 conviction." For that matter, prosecutors may be willing to dispense with the enhancement if a defendant agrees to accept a plea under section 1320.5. But the ultimate issue is whether the Legislature intended the increased punishment to be available in the first place. Accordingly, the question of whether a violation of one statute will commonly result in a violation of another is not dependent on the common result of plea bargaining.
Second, the policy underlying section 12022.1 focuses on the fact that a defendant has been released from custody on a charge rather than the fact that he or she sustains a conviction for the charge. The state Supreme Court emphasized this point in an opinion holding that the enhancement applies in juvenile as well as adult cases. (In re Jovan B., supra, 6 Cal.4th 801, 25 Cal.Rptr.2d 428, 863 P.2d 673.) The court explained that the enhancement "is not `aimed primarily' at convictions as such, nor does it focus on the offender's status as a `convicted' person." (Id. at p. 814, 25 Cal.Rptr.2d 428, 863 P.2d 673.) Rather, citing an earlier version of section 12022.1, the court emphasized: "Then, as now, the focus of the enhancement was the bail/O.R. status of the offender at the time he committed the later felony, and the function of `convictions' was simply to ensure that both the `bailed' and `while-on-bail' charges were valid." (Id at p. 814, fn. 8, 25 Cal.Rptr.2d 428, 863 P.2d 673, original italics.)
Analysis of the relevant factors indicates that the Legislature did not intend section 12022.1 to enhance a conviction for the nearly identical conduct described in section 1320.5. Accordingly, the enhancement must be stricken.
Our decision obviates the need to correct errors with respect to the sentencing structure. Specifically, the trial court designated the term for making criminal threats as the principal term. The People point out that the court should have instead designated the principal term as the failure to appear because the sentence for that offense, with the related enhancement, would have been greater. (See § 1170.1, subd. (a).) However, with the enhancement stricken, the sentence is lawful.

III. Making Criminal Threats and Violation of Court Order
Defendant claims the trial court violated section 654 by imposing multiple punishments for the offenses charged in count 1 (making terrorist threats) and count 2 (violation of a court order). The *252 People concede the error. We shall accept the People's concession.
Section 654 provides, in pertinent part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "Section 654 prohibits multiple punishment for an indivisible course of conduct even though it violates more than one statute. [Citation.] Whether a course of conduct is indivisible depends on the intent and objective of the actor." (In re Joseph G. (1995) 32 Cal.App.4th 1735, 1743, 38 Cal.Rptr.2d 902.)
As charged and presented to the jury, both offenses involved the threatening phone message defendant left on Kally's answering machine on March 16, 1999. But the trial court imposed a prison term for count 1 and a jail term (with credit for time served) for count 2. The jail term must be stayed. (In re Joseph G., supra, 32 Cal.App.4th at p. 1744, 38 Cal.Rptr.2d 902 ["On appeal, the court may stay the effect of the judgment as to the lesser offense so far as the penalty alone is involved."].) It does not matter if the sentences were concurrent (see People v. Deloza (1998) 18 Cal.4th 585, 594, 76 Cal. Rptr.2d 255, 957 P.2d 945), or if defendant failed to object. (See People v. Hester (2000) 22 Cal.4th 290, 295, 92 Cal.Rptr.2d 641, 992 P.2d 569 [waiver does not apply to section 654 issue unless defendant agreed to sentence as part of plea].)

DISPOSITION
The judgment is modified to reflect a section 654 stay of the one-year jail term imposed for count 2 (violation of a court order) and to strike the two-year enhancement imposed under section 12022.1. The trial court is directed to amend the abstract of judgment and court's minute order to reflect these modifications. The court shall forward a certified copy of the amended abstract to the Department of Corrections. As modified, the judgment is affirmed.
We concur: BLEASE, Acting P.J., and DAVIS, J.
NOTES
[*] Opinion filed March 19, 2003, not certified for publication.
[1] Further undesignated section references are to the Penal Code.
[2] Section 954 reads: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interest of justice and for good cause shown may, in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count." (§ 954.)
[3] Relying primarily on this court's decision in People v. Walker (2001) 88 Cal.App.4th 227. 105 Cal.Rptr.2d 614 (review granted July 18, 2001, S097725), the trial court rejected similar contentions. However, the state Supreme Court has since granted review in that case. (Cal. Rules of Court, rules 976, 977.)
[4] Section 1320 is the counterpart to section 1320.5, and establishes the crime of failure to appear when a defendant has been released on his or her own recognizance.